VOLKMAN, Respondent, *v.* CHICAGO, ST. P., M. & O. RY. Co., Appellant.

### 1. Railroads—Killing Stock—Burden of Proof—Section 679, C. C. Pro.

In an action against a railroad company for killing stock, proof of the killing, under section 679, C. C. Pro., providing that the killing shall be *prima facie* evidence of negligence of the company, the plaintiff need not prove more than the killing, but where the defendant, by its servants in charge of the train, shows that there was no negligence or want of ordinary care and skill, the *prima facie* case is overcome, and it devolves upon the plaintiff to affirmatively show that the defendant was guilty of gross negligence, or he cannot recover.

### 2. Same—Question of Law—Section 679, C. C. Pro.—Construction.

In an action against a railroad company for killing stock, the question as to when the *prima facie* case, under section 679, (providing that the killing shall be *prima facie* evidence of negligence of the company,) is overcome, is one of law for the court, and not of fact for the jury.

### 3. Same—Pleading—Appraisement—Section 680, C. C. Pro.

In an action against a railroad company for killing stock, it is not necessary to allege a compliance with section 680, C. C. Pro., providing for an appraisement of stock killed or injured. The provision is merely cumulative or permissive in its character, and a compliance with it is not a prerequisite to the institution of a suit.

(Argued May 11, 1887; reversed May 26; opinion filed February 15, 1888.)

Appeal from the district court of Minnehaha county; Hon. C. S. PALMER, Judge.

This action was to recover the value of a mare that had been killed on the defendant's track. The plaintiff had judgment below, and the defendant appealed.

The animal was killed at a bridge 105 or 107 rods west from a station called "Hartford," by a regular west-bound "mixed" train, on the evening of November 26, 1884. The train arrived at the station at 9 : 05 P. M., and left at 9 : 15 P. M.

The engineer testified that it was dark, foggy, and snowing at the time of the accident; that he was running at the usual rate of speed,—15 miles an hour. The engine had a proper headlight. He did not see the horse, though he was on the lookout. It was so foggy he did not think he could see more than 10 feet ahead. Ordinarily on a straight track one can see a telegraph pole and a half ahead. He knew from the jar he had struck something, but did not know it was an animal until he got to the next station, and examined his engine. He did not stop. He thought the animal was in the bridge, because he ran over it. If it had been standing on the track it would have been thrown off. It takes three or four minutes to go from the station to the bridge. The track is straight. He did not think an object as large as a man lying down on the bridge could be seen from the depot.

The fireman testified that he was on the tank of the engine at the time, and was not looking ahead. He felt the jar. Believed he was putting in fuel at the time. He remembered it was very foggy in places that night; before they got to Hartford.

The engineer's testimony as to its being foggy and snowing at the time of the accident was controverted on the rebuttal. There was also testimony that it was a starlight night, and that one in daylight, standing at the station at Hartford, could see an object as large as a man lying down on the bridge where the animal was killed.

Section 680, C. C. Pro., referred to in the opinion, provides.

that "whenever any horses, cattle, or stock may be killed or crippled by any train of cars or locomotives upon any railway within this territory, it shall be lawful for the owner,   *   *   * after first giving a station agent of the corporation   *   *   * written notice of his intention, to apply to a justice of the peace   *   *   *, to appoint appraisers to affix a value upon the horses,   *   *   *. and said justice shall appoint three discreet and disinterested citizens of the county a board of appraisers, who,   *   *   * shall   *   *   * affix a value upon the same,   *   *   * and return to said justice   *   *   * a written report,   *   *   * setting out the valuation," etc.

*H. H. Keith,* for appellant.

The court erred in refusing to direct a verdict for defendant at the close of the testimony.

1. The plaintiff had entirely failed in her proof.

2. It was incumbent upon plaintiff to show that she had complied with section 680 of the Code of Civil Procedure.

3. The defendant completely met the requirements of the statute by showing that it was free from negligence or carelessness, and that the train was run with usual care and caution.

The accident, according to the testimony, was unavoidable; and when the defendant rested its case the burden of proof was then on the plaintiff, and, not having offered any evidence to show negligence, she cannot recover. *Wainscott* v. *L. & N. R. Co.*, 3 Bush, 149; *Packwood* v. *C., St. L. & N. O. R. Co.*, 7 Amer. & Eng. R. C. 584; *Talbot* v. *Ky. Cen. R. Co.*, 78 Ky. 621; S. C. 7 Amer. & Eng. R. C. 585; *Durham* v. *Wil. & W. R. Co.*, 82 N. C. 352.

The most that can be said of section 679 is that in the first instance the company must show how they were conducting the train, and the circumstances of the injury complained of, and that they were not careless or negligent in running the train. Having done this, they overcome the presumption against them, and the plaintiff is then required to prove negligence or carelessness on the part of the company.

Kentucky, Mississippi, Maryland, Arkansas, and North Carolina have the same statutes in reference to killing stock by railroad companies, and the supreme courts in each of these states have given such construction to them.

The general rule is that, in an action against a railroad company to recover damages for killing live-stock, the plaintiff must prove affirmatively that the want of care on the part of the company or its employes caused the injury.

Even in those states where the statute makes the killing of stock *prima facie* evidence of negligence on the part of the company, the courts have said that, but for such statutes, the rule would have been otherwise. Wood, R. L. § 422; Pierce, 428; *Talbot* v. *Ky. Cen. R. Co.*, 78 Ky. 621; *C., St. L. & N. O. R. Co.* v. *Packwood*, 7 Amer. & Eng. R. Cas. 588; *P. C. & St. L. R. Co.* v. *McMillan*, Id. 588; *Small* v. *C. R., I. & P. R. Co.*, 50 Ia. 338.

The weight of authority is to the effect that the plaintiff must show, affirmatively, negligence on the part of the defendant, and especially so when the property of the plaintiff is illegally on defendant's track, and a trespasser. *Ill. Cen. R. Co.* v. *Godfrey*, 71 Ill. 500; *Bemis* v. *Conn. & P. R. R. Co.*, 42 Vt. 375; *Maynard* v. *Boston & Me. R. R.*, 115 Mass. 458; *Atchison, T. & S. F. R. Co.* v. *Walton*, 9 Pac. Rep. 351; *Munger* v. *Tonawanda R. Co.*, 4 N. Y. 349; *Clark* v. *Syracuse & U. R. Co.*, 11 Barb. 112; *Terry* v. *N. Y. Cen. R. Co.*, 22 Barb. 574.

If the proof is all one way, either in favor of or against negligence, it is always a question of law. *Herring* v. *W. & R. R. Co.*, 51 Amer. Dec. 395; *Gonzales* v. *N. Y. & H. R. Co.*, 38 N. Y. 440; *Callahan* v. *Warne*, 40 Mo. 131.

If the evidence is equally consistent with the absence as with the existence of negligence, it is error to submit it to the jury. *Baulec* v. *N. Y. & H. R. Co.*, 59 N. Y. 357; *Wilds* v. *Hudson R. R. Co.*, 24 N. Y. 430; *Gonzales* v. *N. Y. & H. R. Co.*, 38 N. Y. 440; *P. C. & St. L. R. Co.* v. *McMillan*, 7 Amer. & Eng. R. Cas. 588.

It is held by the supreme court of the United States that where the evidence is insufficient to support a verdict for the plaintiff, and the appellate court would reverse the judgment

for that reason, the trial court should direct a verdict for defendant. *Schofield* v. *C., M. & St. P. R. Co.*, 114 U. S. 615, 5 Sup. Ct. Rep. 1125; *Randall* v. *B. & O. R. Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322; *Board of Co. Com.* v. *Clark*, 94 U. S. 278; *Grand Chute* v. *Winegar*, 15 Wall. 355; *Insurance Co.* v. *Baring*, 20 Wall. 159.

The court should direct a verdict when, if submitted to the jury, a contrary verdict would be set aside as against the weight of evidence, or contrary to law, or as without evidence to support it. *Stuart* v. *Simpson*, 1 Wend. 376; *Algur* v. *Gardner*, 54 N. Y. 360; *Godkin* v. *Bank*, 6 Duer, 76; *Dryden* v. *Britton*, 19 Wis. 22; *Lane* v. *Railroad Co.*, 14 Gray, 143; *Corning* v. *Troy Factory*, 44 N. Y. 577.

It is the settled law that, where the existence of a fact is clearly proved by the undisputed testimony, the court should hold the fact to be established, and it is error to leave to the jury whether or not the fact exists. *Railroad Co.* v. *Skinner*, 19 Pa. St. 298; *Story* v. *Brennan*, 15 N. Y. 524; *Poleman* v. *Johnson*, 84 Ill. 269; *Nichols* v. *Luce*, 7 Wend. 160.

When the testimony fails to make a case against the defendant, within the issue, it is the duty of the court to so instruct the jury. *Grand Trunk R. Co.* v. *Nichol*, 18 Mich. 170; *Hynds* v. *Hays*, 25 Ind. 31; *Parker* v. *Jinkens*, 3 Bush, 587; *Sheldon* v. *Hudson R. R. Co.*, 26 Barb. 226.

The appellate court will reverse a judgment and grant a new trial when the verdict of the jury is against the weight of evidence, even though there may have been some conflict in the testimony. Hayne, New Trials & Appeals, § 97; *Hawkins* v. *Reichert*, 28 Cal. 539; *Dickey* v. *Davis*, 39 Cal. 569; *Northern Pacific R. R. Co.* v. *Shimmel*, 9 Pac. Rep. 889; *Wilds* v. *Hudson River R. R. Co.*, 24 N. Y. 430.

The complaint of plaintiff did not allege facts sufficient to bring the action within the provisions of the statute.

The plaintiff cannot claim the protection of section 679 and ignore section 680.

The object of this section is to avoid tedious litigation. The Kentucky statute is similar to this, and under the decisions of

that state it seems to be a prerequisite to bringing an action of this kind that the plaintiff must first comply with the provisions of the statute.

*Bailey & Davis*, for respondent.

The proceedings provided by section 680, C. C. Pro., is not a condition precedent to the right of bringing an action. The language of the section plainly indicates this.

Further, such construction would render the section unconstitutional.

This is also a matter, from the value, not within the jurisdiction of a justice of the peace. Organic Law, § 1926. See *Mortimer* v. *Louisville & N. R. Co.*, 10 Bush, 485.

All the other points of difference can be resolved into a single substantial ground of objection, viz.: that the question of negligence under the evidence should not have been submitted to the jury.

The killing of the mare was established by the proof. This made a *prima facie* case for the plaintiff, under the provision of Section 679.

Whether this *prima facie* case was overcome by defendant's evidence is purely a question of the weight of evidence. The weight to be given evidence is a question for the jury. It is for them to say whether the *prima facie* case is overcome.

The question of negligence is for the jury, even upon undisputed evidence, unless the conclusion drawn from the facts is also indisputable. If different minds would draw different conclusions from the facts as established, the jury is the proper tribunal to settle the question. *Williams* v. *Nor. Pac. R. R. Co.*, 14 N. W. Rep. 97, S. C. 11 Amer. & Eng. Ry. Cas. 421; *Railroad Co.* v. *Stout*, 11 Wal. 663–665; *Western Maryland R. R. Co.* v. *Carter*, 11 Amer. & Eng. Ry. Cas. 482.

The jury were the sole judges of the credibility of the witnesses. It was for them to decide whether they testified truthfully. This is important upon the question whether there was a dense fog in that locality. The testimony of the engineer upon

this point is unreasonable.   It is not in harmony with that of the fireman, who saw different tracts of fog.   He only saw one, and no snow.   *Little Rock & Ft. Smith Ry. Co.* v. *Finley*, 11 Amer. & Eng. Ry. Cas. 469.

His testimony was in conflict with that of three other witnesses.

It was certainly proper for the jury to settle this question. They evidently did not believe the "fog story."

If the fog is cleared away, it is practically an end of the defense on the question of negligence.   The defense needed the cover of the fog to hide carelessness of the engineer.   Without it there would be no excuse for his failure to see the mare, on this straight line of road, just starting from the depot at a rate of speed that took three or four minutes to go 105 rods.   If he had been watchful, as was his duty, he could have prevented the accident.   That he did not see the mare, and that the shock from striking her did not arrest his attention, are circumstances sufficient to warrant the verdict establishing inattention and negligence on his part.

THOMAS, J.[1]   Plaintiff brought this suit in the district court of Minnehaha county to recover the value of a mare, which she alleges in her complaint was run over and killed by defendant's engine and cars, through the gross negligence of its servants and employes, who were in charge and control of said train of cars at the time of the accident.

The defendant, by its answer, puts in a general denial to the allegations of the complaint, and further alleges that its servants and agents were careful, prudent, and skillful in the management and running of said engine and train of cars on the occasion mentioned in the complaint.

The plaintiff proved the ownership and killing of the mare, and it was stipulated by both parties that the reasonable value of said mare was $140.

The defendant, among other witnesses, introduced the engineer and fireman, who were in charge of the engine at the time of the killing of said mare, all of whose testimony was in

[1] NOTE BY JUDGE THOMAS.—In the case of *Volkman* v. *Chicago, etc., Ry. Co.*, change the words, "negligence and want of ordinary care," so as to read, "gross negligence," wherever they occur in the opinion.

effect that there was no negligence or want of ordinary care or skill in the management of said engine and cars on the occasion referred to, but their evidence showed clearly that the killing was unavoidable.

The plaintiff then called one or two witnesses in rebuttal, but their testimony was immaterial, as it had no tendency to refute or contradict the evidence given by witnesses for defendant.

Both parties having rested, counsel for defendant moved the court to direct a verdict in its favor, because there was no evidence in the case tending to show negligence or want of ordinary care on the part of its agents or employes in the management of its engine and cars at the time of the killing of said mare. This was promptly overruled by the court, and thereupon, after the usual charge by the court, the case was submitted to the jury, who returned a verdict for the plaintiff for the sum of $140, and judgment was entered in accordance therewith.

In due time defendant, by its counsel, filed grounds, and applied to the court to set aside said judgment, and grant a new trial, which was denied, and defendant prosecutes this appeal, seeking a reversal of the judgment, and in this behalf assigns numerous errors, among them "the refusal of the court to direct a verdict for defendant." This is the only error, perhaps, that we shall notice at length, as we think it strikes directly at the *raison d'etre* of the judgment.

The plaintiff, by proving the killing of the mare, established a *prima facie* case under section 679 of the Code of Civil Procedure; and had defendant failed to introduce any proof, she would have been entitled to a verdict in her favor, under the direction of the court. But the defendant introduced its employes engaged in the running of the train at the time; and as their evidence shows no negligence, or want of ordinary care and skill, the *prima facie* case of plaintiff was overcome; and upon her failure to show affirmatively that defendant was guilty of gross negligence in the killing of said mare, she could not recover therefor.

It is clear that but for the statute (section 679 of the Code of Civil Procedure) the mere proof of the killing would not be sufficient to make a *prima facie* case.

As this section is in derogation of the rule at common law and the general rule of practice prescribed by our Code of Civil Procedure, it behooves us to consider the effect, scope, and object of this provision, in order to properly construe it.    It seems to us that this section was enacted for the purpose of overcoming the difficulty, generally supposed to exist with plaintiffs in this kind of actions, in making proof of facts which are only known as a rule to the servants and agents of the defendant. Hence, when the railway company placed their servants and employes, in whose breasts these facts are presumed to rest, on the witness stand, and purged their consciences by testifying, under oath, touching all the facts and circumstances within their knowledge, concerning the killing or injury, the reason for the statute ceases.    To hold otherwise would work great injustice and oppression, and would be to prescribe a different rule for the adjudication of rights of persons and property engaged in the railway business from that which obtains in reference to other persons whose rights of property are in nowise more sacred.

This view of the law seems to be in harmony with the decisions of the courts of last resort of all the states which have a similar statute on this subject.    *Railroad Co.* v. *Wainscott*, 3 Bush, 149; *Railroad Co.* v. *Packwood*, 7 Amer. & Eng. R. Cas. 584; *Railroad Co.* v. *Talbot*, 78 Ky. 621; *Durham* v. *Railroad Co.*, 82 N. C. 352.

The position taken by counsel for plaintiff, that the question as to when the *prima facie* case is overcome is a question for the jury, is entirely untenable.    It is clearly a question of law for the court.

The question raised by the counsel for defendant as to the necessity of alleging a compliance with section 680 of the Code of Civil Procedure, which provides for an appraisement or valuation of all stock killed or injured by railroad corporations in this territory, which question was raised by an objection in the

nature of a demurrer *ore tenus* in the court below, was properly overruled by said court. We regard the statute in question as merely cumulative and permissive in its character, and a compliance therewith is not a prerequisite to the institution of suits of this kind.

We are clearly of the opinion that the district court committed an error in refusing to grant counsel's motion to direct a verdict in favor of the defendant; hence the judgment is reversed.

All the justices concurring.