### GREAT NORTHERN RY. CO. v. COATS.

#### (Circuit Court of Appeals, Eighth Circuit. April 14, 1902.)

#### No. 1,601.

1. RAILROADS—FIRE FROM LOCOMOTIVE—EVIDENCE—BURDEN OF PROOF.

Where fire is shown to have started from sparks from a passing locomotive, the burden is on the company, in an action for damages, to show that the locomotive was properly constructed, equipped, and operated.

2. SAME—SUFFICIENCY OF EVIDENCE—JURY QUESTION.

Where it clearly appeared that a fire was started on the right of way of a railroad by a passing locomotive, which extended to and destroyed adjoining property, and the company, on the trial of an action against it, produced testimony, which was not directly contradicted, tending to show that the locomotive was properly constructed, equipped, inspected, and operated, *held*, that it was the province of the jury to determine whether the presumption of negligence, created by the starting of the fire, was overcome, since the jury had the right to weigh the testimony and to determine whether the witnesses for the company were credible.

3. SAME.

The engineer and fireman, who were the principal witnesses for the company in an action for fire started by sparks from their locomotive, testified that, at the time or immediately after the locomotive passed the place where the fire was set, the front and rear dampers were closed; that the former had not been opened; that the screen netting in the smokestack was in place; that there was no opening in the ash pan through which fire could escape; that the steam was shut off; and that it was running on acquired momentum at the rate of 15 miles an hour. Plaintiff's evidence tended to show that, before reaching the place where the fire started, the locomotive was climbing a grade under forced draft, and that it had acquired such a momentum that it could run a quarter of a mile up grade with steam shut off and dampers closed, which was contended to be negligent on a windy day, when in proximity to combustible materials. *Held*, that the court could not say, as a matter of law, that the locomotive was properly operated.

4. SAME—INSTRUCTIONS.

Where there was no evidence in an action against a railroad for setting a fire by its locomotives that the fire started on plaintiff's land, outside of furrows plowed by him on the margin of the right of way, and where he had directed defendant's sectionmen not to burn grass outside the furrows, it was not error to modify an instruction requested by defendant, that plaintiff could not recover if the fire caught outside of the furrows, by the additional requirement that it must also appear that the train was properly managed.

5. SAME—DIRECTIONS TO SECTIONMEN.

A direction by the owner of land adjoining a railroad right of way to railroad sectionmen not to burn grass on his land, but which does not

direct them not to remove the grass in some other way, does not relieve the company from liability for setting fire thereto by its locomotives.

**6. SAME—INSTRUCTION—VELOCITY OF WIND.**
An instruction in an action for fire started by sparks from a locomotive that the velocity of the wind might be taken into consideration was not erroneous, in failing to state how and in what manner the velocity of the wind could be considered.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of South Dakota.

W. E. Dodge (A. B. Kittredge, C. Wellington, and Charles S. Albert, on the brief), for plaintiff in error.

C. S. Palmer (Frank R. Aikens and H. E. Judge, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This action was brought by Clark G. Coats, the defendant in error, against the Great Northern Railway Company, the plaintiff in error, to recover the value of certain property, consisting of a dwelling house, two barns, and a quantity of farming utensils and machinery, which, as he alleged, were destroyed on April 26, 1899, by a fire which was set out on the defendant company's right of way by sparks, cinders, and coals which were emitted by one of the defendant company's engines. The complaint charged, in substance, that the defendant company carelessly and negligently permitted grass, weeds, bushes, hay, stubble, and other combustible materials to grow and accumulate upon its right of way at the place where the fire originated, and on the day last aforesaid, by its servants, agents, and employés, in running and operating its engines and trains over its railway at said place, carelessly and negligently set fire to said grass and other combustible materials there permitted by said defendant to accumulate, by said engine emitting and discharging sparks, cinders, and live coals, thereby igniting said grass and other combustible materials, which said fire was, through the defendant's carelessness and negligence, set upon its right of way, and, being so set, was, through the defendant's carelessness, permitted to extend from its right of way to the plaintiff's premises, and, by so extending, consume a large quantity of the plaintiff's property, which was situated on a tract of land adjoining the right of way. We quote the above from the complaint, using substantially the language of the pleading. There was a verdict below in favor of the plaintiff for the sum of $11,000, and the case is before this court for review, various errors having been assigned.

At the conclusion of the case the defendant company moved the court to withdraw from the jury the issue as to the manner in which the engine that occasioned the fire was operated and managed, for the reason, as stated in the motion, that the uncontradicted evidence tendered by the defendant company relating to the management of the engine "is so clear and circumstantial that no reasonable person can doubt its verity." The court overruled the motion, and its action

in that behalf is the first alleged error to which our attention is directed.

Preliminary to a discussion of this point, it should be observed that the testimony for the plaintiff below showed that the fire started on the defendant's right of way about 1:30 p. m., and not over a minute or two after the engine and train which is supposed to have kindled the fire had passed the place where it was discovered; that at that point on the right of way there were some dry weeds and grass, which extended all the way to the plaintiff's buildings; that a high wind was blowing in the direction of the buildings, and that the fire, after it had caught on the right of way in the grass and weeds, ran very rapidly to the plaintiff's barns and dwelling house, and destroyed them before much of the contents could be removed. In view of the testimony, it is manifest that the fire was kindled by coals, sparks, or cinders which were emitted or dropped by the defendant company's engine; and there was sufficient evidence to warrant the jury in finding that some combustible material, such as dry grass and weeds, had been permitted to accumulate on the defendant's right of way, and that the fire started therein on the right of way. It follows, therefore, that the testimony in question not only created a presumption of negligence on the part of the defendant company, but, in so far as it showed that the company had allowed combustible material to accumulate on its right of way, it established a specific act of negligence, to which the injury complained of might well be attributed. McCullen v. Railway Co., 41 C. C. A. 365, 101 Fed. 66, 70, and cases there cited; Eddy v. Lafayette, 1 C. C. A. 441, 49 Fed. 807; Id., 163 U. S. 456, 466, 16 Sup. Ct. 1082, 41 L. Ed. 225; Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co. (decided at the present term) 114 Fed. 133.

Learned counsel for the railroad company do not controvert these propositions, but they assert that the trial court should have told the jury, in substance, that the engine was properly managed, and that the company was guilty of no negligence in that respect, and that a reversible error was committed in not eliminating that issue from the case.

We think that these propositions are untenable. The testimony introduced by the plaintiff, that his property had been destroyed by a fire kindled on the right of way of the railroad by coals, cinders, or sparks emitted by a passing locomotive, if the jury believed such to be the fact, as they must have done, cast on the defendant company the burden of overturning the presumption of negligence thus raised; that is to say, the burden of showing that the locomotive was properly handled or operated, and that due care had been exercised in the construction and equipment of the same and in keeping it in repair, so as to prevent the emission of cinders and sparks, so far as that end could be attained without impairing its efficiency. McCullen v. Railway Co., 41 C. C. A. 365, 101 Fed. 66, 70. This presumption could only be overcome by testimony, and, unless we apply to this class of cases a rule different from that which is applied in other cases, it was the province of the jury to determine the weight that should be accorded to the testimony which was introduced for that purpose, and

also to determine the credibility of the witnesses who testified on that subject. It was well said by the supreme court of Minnesota in Karsen v. Railroad Co., 29 Minn. 12, 15, 11 N. W. 122, when construing a statute of that state which makes the scattering of fire by a locomotive engine prima facie evidence of negligence:

"Neither is a jury necessarily bound to accept as conclusive the statement of a witness that an engine was in good order or carefully and skillfully operated, although there is no direct evidence contradicting the statement. They have a right to consider all the facts and circumstances in evidence bearing upon the condition or mode of operating the engine, and upon the accuracy of witnesses."

It was further said, in substance, in the same case, that the statute under consideration creates a disputable presumption of negligence on the part of a railroad company, when it appears that one of its locomotive engines has set out a fire which has destroyed adjoining property; that the effect of the statute is (this latter fact being shown) to cast upon the company the burden of proving affirmatively that it has done its duty, and was not in fact guilty of any negligence; that it must do this by satisfactory evidence, as in any other case where one holds the burden of proof; and that if a jury finds against the company, deciding that the presumption of negligence has not been overcome, it is within the power of the trial court, and its right and duty, as in other cases, to set aside the verdict, if it is of the opinion that it was not justified by the evidence. We cannot well understand upon what theory the statement of persons, who were in charge of a locomotive when it occasioned a disastrous fire, that it was properly and prudently managed, etc., must be accepted by a court as conclusive, and as overturning, as a matter of law, the presumption of negligence raised by other testimony. It would seem, rather, that the triors of the fact ought, in such a case, to consider how far the interest of such witnesses—their natural desire to absolve themselves from all blame—may have colored their evidence, and how far their statements are consistent with other facts and circumstances which have been proven. If a court undertakes to weigh such evidence, and say that the witnesses are credible, and also to decide as to the effect of the proof, it plainly assumes the functions of the jury, or at least a function which is discharged by the jury in other cases.

Our attention has been called by learned counsel for the plaintiff in error to the case of Menomonie River Sash & Door Co. v. Milwaukee & N. R. Co., 91 Wis. 447, 65 N. W. 176, 179, where the reporter says in the syllabus that the inference of negligence arising from the fact that a fire was set by sparks from a locomotive is overcome by undisputed evidence that the engine was properly constructed and equipped, and was carefully inspected the day before the fire, and found to be in proper order, and was properly managed. But it is important to note that in that case the court said that the manner in which the fire was occasioned was not observed by any one, but was wholly a matter of inference, and that in that respect the case before it differed from other cases decided by the same court, namely, Kurz & Huttenlocher Ice Co. v. Milwaukee & N. R. Co., 84 Wis. 171, 53 N. W. 850, and Stacy v. Railway Co., 85 Wis. 225, 54 N. W. 779, in which latter

cases it was expressly decided that it was erroneous to withdraw from the jury the question respecting the negligent construction and operation of an engine, where it appeared that a fire started on the track shortly after an engine passed, although the company did produce witnesses who testified that the engine was provided with the most approved appliances to prevent the escape of fire, and was properly handled. If we should adopt the doctrine of the Wisconsin case first above cited (Menomonie River Sash & Door Co. v. Milwaukee & N. R. Co.), it would not fit the case in hand, because in this case the fire originated on the defendant's right of way, in the weeds or grass, and was discovered not over a minute, as the plaintiff below said, after the train passed, and was evidently occasioned by sparks or cinders dropped by the locomotive. According to the Wisconsin decisions, therefore, the issue as to the skillful operation of the locomotive on the occasion of the fire was properly submitted to the jury.

In addition to the considerations aforesaid, which are ample, in our judgment, to show that the trial court committed no error in the respect now claimed, it will be profitable to refer to the testimony bearing upon the issue concerning the operation of the train.

The defendant company relied principally upon the testimony of its engineer and fireman, who testified, in substance, that, about the time or immediately after the engine passed the point where the fire was kindled, both the front and the rear dampers of the engine were closed; that the front damper had been closed from the time the train left Yankton; that the screen netting in the smokestack was down or in place; that there was no opening about the ash pan from which fire could have escaped; that the steam was shut off; and that thereafter the train was running on its acquired momentum at the rate of about 15 miles per hour, which was sufficient to carry it up an incline beyond the point where the fire occurred, and down the other side into the city of Sioux Falls. On the other hand, counsel for the defendant in error direct attention to evidence which shows that, for some distance before reaching the place where the fire was set, the train had been climbing an up grade on a curve, under a forced draught, and that by so doing it had acquired such a momentum that, with the steam shut off and all the dampers closed, it was able to run more than a quarter of a mile beyond the place where the fire was set, on an up grade, before reaching the crest of the hill. It is claimed that these facts tend to show that the train was not operated with the degree of care that ought to have been exercised on a very windy day, past a place where there was considerable combustible material on the right of way, and buildings near by. We refer to this testimony, and the contentions made with reference thereto, mainly for the purpose of saying that in the light thereof the trial judge was not bound to decide, as a matter of law, that the trainmen had told the truth, that the engine was skillfully handled on the occasion of the fire, and that no negligence could be imputed to the defendant company in that respect. This was a question for the jury to determine in the light of all the circumstances of the case, as well as the question whether the defendant company had permitted combustible material to accumulate on its right of way. The burden being on the defendant company, as before shown, to

prove affirmatively that it had operated its engine in a proper manner, we are not able to say that the proof relied upon to establish the skillful management of the engine was so clear and circumstantial as to remove all doubt on that point in the mind of a reasonable person. But even if this issue had been eliminated from the case, it was still the province of the jury to determine, as counsel for the plaintiff in error are compelled to concede, whether the defendant company had not been guilty of negligence which occasioned the injury, in permitting combustible material to accumulate on its right of way. It is most probable, we think, that the defendant company was held respon'sible for the fire for that reason.

Counsel for the plaintiff in error argue two other assignments of error relating to the instructions, which are all that require special notice.

There was some evidence at the trial that on one occasion before the fire the plaintiff below plowed certain furrows east of the railroad track, and along the margin of that part of the right of way where the fire originated, telling the defendant's sectionmen at the time not to burn the grass and weeds east of these furrows, as he had sown some tame grass east of them, which he did not care to have destroyed, or words to that effect. In view of this testimony, the defendant company asked the court to instruct the jury, in substance, that if the plaintiff plowed these furrows on the east side of the railroad track, and forbade the sectionmen to burn east of them, and if they found that the fire originated east of the furrows, then the plaintiff could not recover. The court gave this instruction, with the modification that, on the state of facts supposed, the plaintiff could not recover, provided the engine and train were carefully and properly managed. Counsel for the plaintiff in error complain of this modification of their request, but we are of opinion that no error was committed in this respect—First, because there seems to have been no testimony that the fire originated in the grass east of the furrows; and, second, if there had been such evidence, and if it also appeared that the fire was occasioned by the negligent handling of the engine, we perceive no reason why the defendant should not have been held accountable. Because the plaintiff ordered the sectionmen not to burn the grass outside of the furrows and on his own land, where he had sown tame grass, it does not follow that the company had the right to kindle a fire east of the furrows by the negligent operation of one of its trains. Besides, even if he did give the sectionmen orders not to destroy the grass outside of the furrows by burning, he appears to have made no objection to their removing such grass or weeds in any other way,—as by cutting them down. There is no merit in this assignment, nor is it one of any importance.

Furthermore, the lower court instructed the jury that, in determining whether the defendant company exercised ordinary care on the occasion of the fire, "the velocity of the wind may be taken into consideration," and this latter excerpt from the charge is criticised. If we fully comprehend the nature of the criticism, it is that the statement, as made, was too general; that the jury should have been advised exactly how and in what manner they might take the velocity of the wind into account; and that, because this was not done, the

defendant was prejudiced. We are not able to concur in that view. Jurors, as well as judges, are presumed to know that railroad trains do and that they must run on windy as well as on other days, and that a railroad company is not negligent merely because it operates a train in a high wind. We have no reason to suppose that the jury failed to comprehend what was in the mind of the court, namely, that more care ought to be exercised in handling fire on a windy day than on a calm day, and that, in determining whether the defendant had exercised due care on the occasion in question, they might very properly take into account the force of the wind on that day.

Upon the whole, we have failed to find that the trial court committed any error on the trial of this case which would warrant a reversal of the judgment below, and it is therefore affirmed.

SANBORN, Circuit Judge (dissenting). The serious question in this case is whether or not it was the duty of the court to withdraw from the jury the issue whether or not the company failed to exercise ordinary care in the management and operation of its locomotive, because the evidence that it was not guilty of such want of care was so clear and circumstantial that no reasonable person could doubt its verity.

There was evidence from which the jury might properly infer that the fire was set by sparks or coals from the locomotive. It is a general rule of evidence, which has been adopted by this court and by the supreme court of South Dakota,—the state in which this case was tried,—that the scattering of coals or sparks of fire by a locomotive raises a presumption that there was either a defect in the engine, or negligence in its operation. Kelsey v. Railway Co. (S. D.) 45 N. W. 204, 207. But this is not a conclusive presumption of law. It is only a disputable legal or artificial presumption of fact which has been adopted by the courts, ab inconvenienti, for the purpose of changing the burden of proof, because it was so difficult for the plaintiffs to establish in the first instance defects in the locomotives, or negligence in the operation of the engines of railway companies. In Smith v. Railroad Co., 3 N. D. 17, 22, 53 N. W. 173, the supreme court of that state announced the real reason and the true legal effect of this rule in these words:

"But to prevent a denial of justice some of the courts have created an artificial presumption of negligence, to the end that the defendant may be compelled to produce the witnesses who are familiar with the facts on which the issue of negligence depends, that they may be subjected to full and searching cross-examination on all the phases of the case,—on all the possible grounds of negligence. Some courts have refused to go so far. To extend this presumption of negligence beyond the reason for its existence would be irrational. It summons defendant to show that there was no negligence, and the evidence must fully meet every possible ground of negligence under the circumstances and the pleadings. But when the whole case, independently of this artificial presumption, shows that there was no negligence, the presumption cannot be considered for the purpose of making an issue for the jury. It has fully served its purpose, and can have no other effect. We therefore establish it as the rule in this state that the court must, in the first instance, determine the question whether the inference of negligence arising from the mere setting out of a single fire has been fully overthrown."

The rule that the scattering of fire raises a presumption of defect in the engine, or negligence in its operation, was subsequently enacted into a statute in the state of North Dakota. Rev. Codes N. D. § 2984. But even when embodied in that imperative form the supreme court of that state adhered to its rule. It said:

"Setting the fire is made presumptive evidence of such defects or negligence. But this court is fully committed to the principle that whether or not such statutory presumption is overcome by evidence introduced by the defendant is, in the first instance, a question of law for the court (Smith v. Railroad Co., 3 N. D. 17, 53 N. W. 173), and also to the further position that when the proper employés of the defendant railroad company have gone upon the stand, and testified that there were no defects in the construction or equipment of the engine, and no negligence in its operation, making their testimony at all points as broad as the presumption, then, as matter of law, such presumption is overcome. Evidence of that character was introduced by the defendant in this case." McTavish v. Railway Co., 79 N. W. 443, 446.

The same rule prevails in the state of Minnesota, under a similar statute. Thus, while in the Karsen Case, cited in the opinion of the majority, the supreme court of Minnesota held that the evidence for the defendant in that particular case had not satisfactorily overcome the presumption, it as clearly declared that it was a question of law for the court whether or not the evidence had done so, and that whenever it had that effect there was no question left for the jury, and it was the duty of the court to withdraw the issue from their consideration. That court said:

"We do not think or hold that the mere fact that the fire was set by an engine has such an effect as direct evidence of negligence, if the otherwise uncontradicted evidence on the part of the railroad company showed satisfactorily that it had fully performed its duty in the premises. And if a jury should so find, it would be the right and duty of the court to set aside the verdict, as in any other case where it was not justified by the evidence." Karsen v. Railway Co., 29 Minn. 14, 15, 11 N. W. 122.

To the same effect are Spaulding v. Railroad Co., 30 Wis. 110, 123, 11 Am. Rep. 550; Id., 33 Wis. 582; Huber v. Railway Co., 6 Dak. 392, 43 N. W. 819; Koontz v. Navigation Co. (Or.) 23 Pac. 820; Railroad Co. v. Talbot, 78 Ky. 621; Railroad Co. v. Packwood, 7 Am. & Eng. R. Cas. 584; Railroad Co. v. Reese, 85 Ala. 497, 5 South. 283, 7 Am. St. Rep. 66.

Nor is this rule variant from that which ordinarily obtains when uncontradicted evidence meets a disputable presumption of fact. Lawson, in his Law of Presumptive Evidence, at page 661, says:

"Primarily, the rebuttable legal presumption affects only the burden of proof; but, if that burden is shifted back upon the party from whom it first lifted it, then the presumption is of value only as it has probative force, except it be that on the entire case the evidence is equally balanced, in which event the arbitrary power of the presumption of law would settle the issue in favor of the proponent of the presumption."

In Bryant v. Railroad Co., 4 C. C. A. 146, 53 Fed. 997,—an action for negligence resulting in death,—it appeared at the first trial that the deceased was riding on a passenger car of the defendant on its railroad when he was killed, and there was no rebutting testimony. This court held that the fact that he was riding on the passenger car upon the railroad raised a presumption that he was a passenger,

and reversed the court below because it directed a verdict for the defendant. The same fact was proved at the second trial, and the same presumption arose, but it was then rebutted by uncontradicted evidence that a yard master who was without authority to do so was operating the passenger car without the knowledge of the railroad company when the deceased was killed. At this second trial the court below had submitted the case to the jury, and the railroad company was met in this court by the proposition that, since the presumption had once arisen in the case that the deceased was a passenger, it remained and constituted some evidence for the consideration of the jury, and therefore prohibited the court from taking the issue from them. But this court said:

"A presumption of fact, like that which the counsel for the defendant in error here invoke, is a mere inference from certain evidence, and, as the evidence changes, the presumption necessarily varies. A trial court is not bound to disregard a conclusive presumption which arises from all the evidence at the close of a case because at some time in the course of a trial counter presumptions arose. Possession of real estate raises a presumption of title, but, when a legal title is proved in another, a conclusive presumption arises from all the evidence that the latter is the owner, and the court must so direct. Possession of a horse raises the presumption of ownership, but the uncontradicted evidence of competent witnesses that the horse is the property of another, and that the possessor secretly took him from his owner without right, raises so conclusive a presumption of ownership in the latter that the court might be bound to disregard the first presumption from possession, and the possession itself might raise a presumption of larceny."

And we reversed the judgment below, and held that it was the duty of the trial court to take the question whether or not the deceased was a passenger from the jury, notwithstanding the fact that the presumption that he was so arose from the plaintiff's evidence. Railroad Co. v. Bryant, 13 C. C. A. 249, 256, 65 Fed. 969, 975, 976. The presumption of negligence in the operation of a locomotive which arises from the fact that it scatters sparks or coals or sets a fire is neither more sacred nor more conclusive than the presumption of ownership which arises from the possession of property, or the presumption of the relation of one riding in a car to a carrier which arises from his riding on its railroad in its passenger car, or from any other disputable presumption of fact; and it ought to receive no different measure of consideration.

The supreme court of the state of South Dakota (the state in which the case at bar arose, and in which it was tried) has adopted the rule which prevails in North Dakota, Minnesota, and many other states, —the rule that it is always, in the first instance, a question of law for the court whether or not the presumption of defects in a locomotive, or of negligence in its operation, arising from the setting of a fire or the scattering of sparks or coals, is overcome by the testimony of due care introduced by the defendant, and that if the uncontradicted evidence of its proper employés is that there were no defects, or that there was no negligence in the operation of the locomotive, and that testimony is as broad as the presumption, the presumption is overcome, as a matter of law, and it is the duty of the court to withdraw the issue from the jury. Thus, in Kelsey v. Railway Co., 45 N. W. 204, 207, that court said:

"The plaintiff, by proving that the defendant's locomotive engine had set fire to dry grass or other combustible matter along its roadbed, made a prima facie case of negligence; and, had defendant failed to introduce any proof, the plaintiff would have been entitled to a verdict in his favor, under the direction of the court. But the defendant did introduce its employés who were engaged in running the train at the time, and the master mechanic having charge of the repairs of the engines of the road for that division, who testified that this particular engine was in good order, and had the modern appliances attached to it to prevent the emission of sparks and the dropping of live coals of fire, and that the engine was run with the usual care and caution at the time the fire started. This evidence rebutted the presumption raised by the plaintiff's proof, and, had there been no other evidence of negligence, the defendant would have been entitled to a verdict from the jury under the direction of the court."

This rule that the presumption of negligence from the setting of a fire is, as a matter of law, overcome by the uncontradicted testimony of witnesses that due care was exercised, is a rule of evidence, a rule of practice, a rule which simply measures the force and effect of a disputable presumption of fact in the trial of fire cases in the states of South Dakota, North Dakota, Minnesota, and perhaps in other states; and in those states it ought to and does obtain in the federal courts, as well as in the state courts, because it is a just and rational rule, and because the act of congress provides that the practice, forms, and modes of proceeding in actions at law in the national courts shall conform, as near as may be, to the practice, forms, and modes of proceeding existing at the time in like causes in the courts of record of the state within which the federal courts are held. Rev. St. § 914.

The result is that it was, in the first instance, a question of law for the court below in this case whether or not the presumption of negligence in the operation of the defendant's locomotive, which arose from the scattering of the sparks or coals and the setting of the fire, was overcome by the testimony for the defendant; and if the testimony of its proper employés that there was no negligence in the operation of the engine was uncontradicted, and was as broad as the presumption, then that presumption was overcome, as a matter of law, and it was the duty of the trial court to withdraw this charge of negligence from the consideration of the jury on the motion of the defendant.

Turning to the evidence, and testing it by this established rule, the testimony of the engineer and fireman that the engine was carefully and properly managed and operated is found to be as complete and as broad as the presumption; and, unless it can be said to be contradicted in some material part, it entitled the defendant to a withdrawal of this issue from the jury. Where was the contradiction? The only evidence that is claimed to have any such effect is testimony that, "for some distance before reaching the place where the fire was set, the train had been climbing an up grade on a curve, under a forced draught," and that "by so doing it had acquired such a momentum that with the steam shut off, and all the dampers closed, it was able to run more than a quarter of a mile beyond the place where the fire was set, on an up grade, before reaching the crest of the hill." But to my mind there is nothing in this evidence which tends in the least degree to prove that this locomotive was not operated with reason-

able care; nothing to show that this method of operation was not more reasonable and careful than it would have been to have driven it puffing slowly up the hill past the property of the plaintiff, thus giving longer time and more opportunity for fire to escape and ignite the combustible material in the vicinity. The locomotive was attached to a train. The defendant had the right to draw this train around the curve and up the grade with its engine, and to use the necessary draught and fire to accomplish this purpose. The legal presumption is that it operated the locomotive and used the draught and the fire in a careful and proper manner. This presumption is strengthened by the uncontradicted testimony of its employés. No witness comes to say that it did not do so, nor that its engine was not driven up the hill with ordinary and reasonable care. The suggestion that it was not so driven comes, not from the testimony of any witness, but from the mere argument of counsel, with no witness to support it. In this state of the case, the testimony of the proper employés of the company seems to me to have been uncontradicted, and to have overcome the presumption of negligence in operating the locomotive which arose from the setting of the fire, so that this charge of negligence ought to have been withdrawn from the jury.